### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CAITLIN O.,

                Plaintiff,

     v.

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,

           Defendant.

Civil Action No. 17-1939 (JMC)

### <u>MEMORANDUM OPINION</u> [1]

Caitlin O.[2] applied for Supplemental Security Income and Disability Insurance Benefits in 2013. After the state agency denied her application, Ms. O. requested a hearing before an Administrative Law Judge (ALJ), who also found that she was not disabled. The ALJ's decision became final when Ms. O. was denied administrative review. Ms. O. now seeks judicial review of the Commissioner's decision. Magistrate Judge G. Michael Harvey recommended the Court deny Ms. O.'s motion to reverse the agency's decision and grant the Commissioner's motion to affirm. Ms. O. timely objected. Upon consideration of the entire record, the Magistrate Judge's Report and Recommendation, Ms. O.'s objections, the Commissioner's response, and Ms. O.'s reply, the

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] Plaintiff's name has been partially redacted per the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), available at https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Feb. 3, 2023).

Court will accept the Magistrate Judge's recommendation, GRANT the Commissioner's Motion for Judgment of Affirmance, and DENY Ms. O.'s Motion for Reversal. The Court also accepts the Magistrate Judge's recommendation and DENIES Plaintiff's Motion for Default Judgment, ECF 31, and Motion to Expedite the resolution of the case, ECF 46.

The Court acknowledges that this has been a long and taxing process for Ms. O. Although the Court is compelled to affirm the ALJ's decision under the applicable standard of review, that does not necessarily mean the Court would have come to the same conclusion as the ALJ did if it were to consider the same evidence in the first instance.

## I.    BACKGROUND

The facts of this case are set forth in detail in the Magistrate Judge's Report and Recommendation. *See* ECF 47 at 5–25. Because neither Party makes specific objections to the Magistrate Judge's summary of the factual background of the case, the Court adopts it in full. *See Thomas v. Arn*, 474 U.S. 140, 150–51 (1985). Nevertheless, for ease of reading and to evaluate Defendant's objections to the Magistrate Judge's Report, the background of the case is briefly summarized below.

### A. Statutory framework

Due to the fact-intensive nature of disability cases and the breadth of Ms. O.'s objections, it is useful to begin by briefly describing the statutory framework governing the ALJ's decision. To be eligible for benefits, the Social Security Administration (SSA) must find a claimant to be "disabled," meaning that the individual is "[unable] to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A) (DIB); 42 U.S.C. § 1382c(a)(3)(A) (SSI). To determine whether a claimant is disabled, an ALJ is required to undertake a five-step analysis. *See*

20 C.F.R. § 416.920(a)(4); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). The claimant

bears the burden of proof for steps one through four, and the SSA bears the burden of proof for

step five. *See Butler*, 353 F.3d at 997.

At the first step, the ALJ determines whether the claimant is engaging in "substantial

gainful" work activity. *See* 20 C.F.R. § 416.920(a)(4)(i); *see also id.* §§ 404.1571 et seq., 416.971

et seq. If so, the claimant is not disabled. At the second step, the ALJ evaluates whether a

claimant's impairment or combination of impairments is sufficiently severe and has persisted for

long enough a duration to prevent the claimant from performing the work needed for employment.

*See id.* § 416.920(a)(4)(ii); *see also id.* § 416.909. If not, the claimant is not disabled. At the third

step, the ALJ determines whether a claimant's impairment or combination of impairments matches

a "listing"—a statutory list of pre-defined conditions which, if met, automatically mean that the

claimant is disabled. *See* § 416.920(a) (4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the

listings). At the fourth step, the ALJ must assess the claimant's "residual functional capacity" in

order to evaluate whether the claimant can perform relevant work that they performed in the past.

*See* § 416.920(a)(4)(iv). If a claimant can still perform that past work, they are not disabled.

Finally, at the fifth step, the ALJ must decide whether the SSA has shown that the claimant—given

their residual functional capacity, age, education, and work experience—could perform any other

work in the national economy. *See* § 416.920(a)(4)(v). If so, the claimant is not disabled.

**B.  Administrative proceedings**

Ms. O. filed for disability insurance benefits and supplemental security income in October

2013. ECF 17-5 at 2, 4. She claimed a disability onset date of December 9, 2012, due to postural

orthostatic tachycardia syndrome (POTS), migraines, dyslexia, and panic attacks. ECF 17-5 at 2,

4; ECF 17-6 at 5. The state agency determined that Ms. O.'s condition was not severe enough to

3

keep her from working and denied her claims. ECF 17-4 at 2 (initial decision); *id.* at 8, 12 (decision

upon reconsideration). At that point, Ms. O. requested a hearing before an ALJ, *id.* at 15, which

was held on June 17, 2016, *see* ECF 17-2 at 48–84 (transcript). Both Ms. O. and a vocational

expert testified at the administrative hearing. *See id.* at 48. Ms. O. testified about her symptoms,

as well as her living situation. Specifically, she testified that she lived with her sister, *id.* at 52, and

that she could walk for only ten minutes, stand for only five minutes, sit for only twenty minutes

before she needed to elevate her legs, and lift just five to ten pounds, *id.* at 64–65.

The vocational expert testified next, responding to a series of hypotheticals posed first by

the ALJ and then by Ms. O.'s representative. *Id.* at 77–81. The most restrictive hypothetical posed

by the ALJ involved an individual of Ms. O.'s age, education, and work experience who was

limited to "sedentary work." *Id.* at 78–79. Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and small tools. Although a
> sedentary job is defined as one which involves sitting, a certain amount of walking
> and standing is often necessary in carrying out job duties. Jobs are sedentary if
> walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). The SSA clarifies further:

> "Occasionally" means occurring from very little up to one-third of the time. Since
> being on one's feet is required 'occasionally' at the sedentary level of exertion,
> periods of standing or walking should generally total no more than about 2 hours
> of an 8-hour workday, and sitting should generally total approximately 6 hours of
> an 8-hour workday.

Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5. The vocational expert opined that an

individual like the one described by the ALJ could perform several jobs in the national economy,

including quality control worker, grading and sorting worker, and finish machine operator. ECF

17-2 at 78–79. However, when the expert was questioned by Ms. O.'s representative, he admitted

that such an individual could not maintain employment in the national economy if she was required

to either (a) elevate her legs to heart level for two hours a day, or (b) be absent from work two days per month, *id.* at 82.

The expert also testified that an individual of Ms. O.'s age, education, and experience who was limited to "light work" (with several additional limitations, based on Ms. O.'s impairments, *see infra*) could be employed in the national economy as a table worker, machine tender, or general office helper. *Id.* at 78. "Light work" requires that an individual can lift up to twenty pounds, carry objects weighting up to ten pounds off and on for up to six hours a workday, and endure up to six hours of standing or walking each day. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *5–6.

The ALJ issued his decision denying benefits on August 10, 2016. ECF 17-2 at 41. The ALJ's findings were as follows. First, the ALJ found that Ms. O. had not been engaged in substantial gainful activity since the onset date identified in her application. *Id.* at 29. Second, the ALJ found that Ms. O. had seven impairments that were categorized as "severe" under the regulations.[3] *Id.* Third, the ALJ found that Ms. O.'s impairments did not satisfy the conditions of any listed impairment, focusing specifically on Listings 4.05 and 14.06. *Id.* at 31.

The ALJ then determined Ms. O.'s residual functional capacity. After a point-by-point discussion of Ms. O.'s symptoms as reflected in her medical records from the period in question, the ALJ discredited Ms. O.'s description of her symptoms and found that she had the ability to perform "light work," albeit with some additional limitations stemming largely from the side effects of her medication. *Id*. Ms. O.'s additional limitations were that she could never climb

_____

[3] Those conditions were POTS, Ehlers-Danlos syndrome, migraines, chronic fatigue syndrome, gastritis, irritable bowel syndrome, and obesity. ECF 17-2 at 29. The ALJ further concluded that Ms. O.'s affective mood disorder, anxiety-related disorder, and sleep-related disorder were not severe. *Id.*

ladders, ropes or scaffolds; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme heat and cold and exposure to hazards such as moving machinery; and could "tolerate no production rate for pace of work." *Id.*

Based on Ms. O.'s residual functional capacity and the testimony of the vocational expert, the ALJ concluded that Ms. O. had the capacity to perform her past relevant work as a retail sales associate. *Id.* at 39. The ALJ also found that Ms. O. had the capacity to perform other jobs in the national economy, including table worker, machine tender, and general officer helper. *Id.* at 39–40. Accordingly, the ALJ concluded that Ms. O. was not disabled. *Id.* at 41. That decision became final one week later, when the Appeals Council denied review. *Id.* at 2–5.

### C. Proceedings before this Court

Following the rejection of her administrative appeal, Ms. O. filed a Complaint in this Court seeking judicial review of the Commissioner's decision, ECF 1. She then filed a Motion for Judgment of Reversal, seeking a remand to the agency for the award of benefits. ECF 20 at 2. In response, the agency filed a Motion for Judgment of Affirmance, ECF 25, and (on the same day) an opposition to Ms. O.'s motion, ECF 26. Ms. O. replied. ECF 27.

In May 2022, the case was assigned to Magistrate Judge G. Michael Harvey to issue a Report and Recommendation as to all pending motions. *See* Order, May 10, 2022. On October 27, 2022, Judge Harvey issued his 72-page Report and Recommendation, ECF 47, recommending that Ms. O.'s Motion for Reversal be denied, and the Commissioner's Motion for Affirmance be granted. *Id.* at 71. Ms. O. filed Objections, pursuant to Local Civil Rule 72.3(b). ECF 50. Defendant filed a Response to those objections, ECF 56, and Ms. O. filed a Reply, ECF 58.

## II.   LEGAL STANDARDS

### A.  Review of a magistrate judge's report and recommendation

After a magistrate judge enters their recommended disposition, a party may file written objections to the magistrate judge's legal findings, factual findings, or both. Fed. R. Civ. P. 72(b)(2); *see also* LCvR 72.3(b) (requiring the objecting party to "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection"). The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The court may then choose to "accept, reject, or modify the recommended disposition." *Id.*; *see also* LCvR 72.3(b)–(c). In the alternative, the court may choose to receive further evidence or to remand the matter to the magistrate judge with additional instructions. Fed. R. Civ. P. 72(b)(3).

### B.  Review of a final decision by the SSA

A district court reviews a final decision of the SSA with considerable deference. *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). The court's sole task is to determine whether the SSA's decision "is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler*, 353 F.3d at 999. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). That standard "requires more than a scintilla [of evidence], but can be satisfied by something less than a preponderance." *Butler*, 353 F.3d at 999. It is well established that, in determining whether there is substantial evidence to support a decision, the court may neither reweigh the evidence nor second-guess the agency's judgment. *See, e.g.*, *Thompson Med. Co. v. FTC*, 791 F.2d 189, 196 (D.C. Cir. 1986). If there is substantial evidence supporting the agency's conclusion, the standard is met, even if there is also substantial evidence supporting the opposite finding. *Burns v. Dir., Off. of Workers' Comp. Programs*, 41

F.3d 1555, 1564 n.13 (D.C. Cir. 1994) ("Because substantial evidence is something less than the weight of the evidence . . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an ALJ's finding from being supported by substantial evidence.").

None of that means that the district court is permitted to ignore evidence that is contrary to the agency's decision. Instead, the court is required to scrutinize the entire record to ensure that the agency "has analyzed all the evidence" and "sufficiently explained the weight [it] has given to obviously probative exhibits." *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989). Although there is no "rigid requirement" that an ALJ "specifically refer to every piece of evidence in his decision," *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017), the agency's decision must provide at least "some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored," *Butler*, 353 F.3d at 1002. In other words, the Commissioner's decision "must at least minimally discuss" contradictory evidence, so that a court may engage in meaningful judicial review of "what evidence was credited and what evidence was rejected." *Cobb v. Astrue*, 770 F. Supp. 2d 165, 173 (D.D.C. 2011); *see also Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006); *Dunham v. Astrue*, 603 F. Supp. 2d 13, 21 (D.D.C. 2009).

There are two additional evidentiary rules that further guide a court's review. First, in reviewing a final decision of the SSA under the substantial evidence standard, courts must "be mindful of the harmless-error rule." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021). Even if a court perceives error in its review, it must nevertheless "affirm the Commissioner's decision unless the error is prejudicial"—i.e., that the error potentially affected the disposition of the claim. *Id.* Second, although the district court is not permitted to reweigh evidence that the agency has already considered, *see, e.g.*, *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995), the court is required to

consider that evidence (and in particular any evidence that was not addressed in the agency's decision) in the light most favorable to the claimant. *See, e.g.*, *Perry v. Colvin*, 159 F. Supp. 3d 64, 68 (D.D.C. 2016); *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009).

## III. ANALYSIS

Ms. O. raises five primary objections to the Magistrate Judge's Report and Recommendation. First, she contends that the Magistrate Judge failed to recognize that the ALJ omitted material evidence that was favorable to her case. ECF 50 at 9. Second, she argues that the Magistrate Judge failed to recognize that the ALJ did not construct the required "logical bridge" between his evaluation of the evidence and his determination of Ms. O.'s residual functional capacity. *Id.* at 17. Third, Ms. O. argues that the Magistrate Judge misstated the law regarding the weight an ALJ must give to the opinions of treating physicians, and therefore failed to recognize that the ALJ erred when he assigned decreased weight to the opinions of her doctors. *Id.* at 19. Fourth, Ms. O. contends the Magistrate Judge failed to apply the correct law when he recommended the Court affirm the ALJ's finding that Ms. O.'s impairments did not satisfy the requirements of Listing 14.06. *Id.* at 29. Finally, Ms. O. maintains that the ALJ erred by failing to account for the "reasonable accommodations" suggested in the state agency's report and by Ms. O.'s treating physicians when he determined that she had the residual capacity to work. *Id.* at 33.[4] The Court will consider those objections in turn, ultimately rejecting them all.

---

[4] Ms. O. makes several other objections in her briefs, which are disposed of in this footnote. First, she insists that the Magistrate Judge was biased against her. *See* ECF 50 at 1 (describing the Report as "partisan and unbalanced"); ECF 58 at 1 ("The magistrate [judge]'s contempt for Plaintiff's testimony and her legal case is obvious."). Certainly, bias is a valid basis for an objection. However, Ms. O.'s bias accusations are baseless. They are supported solely by her disagreement with the content of the Magistrate Judge's findings; she makes no representation the Magistrate Judge was privy to any extrajudicial knowledge that affected his recommendations. Without that, her generalized contention of bias fails. Second, Ms. O. argues in her Reply that the Magistrate Judge supplied reasons to affirm the ALJ's decision beyond those articulated by the ALJ himself, which is not permitted under *SEC v. Chenery Corp.*, 332 U.S. 194 (1947). *See* ECF 58 at 2, 5, 15, 20. However, Ms. O.'s *Chenery* argument was not raised in her initial objections and is therefore waived. *See United States v. Sitzmann*, 893 F.3d 811, 833 (D.C. Cir. 2018) ("It is generally understood

**A. The ALJ did not fail to consider contrary evidence in the record.**

First, Ms. O. contends that the ALJ erred by failing to consider evidence that would have mitigated in favor of a finding of disability. The purportedly excluded evidence includes: a drop in Ms. O.'s intelligence quotient (I.Q.) since her childhood, at least a half-dozen medically determinable impairments, various medical opinions from medical professionals, the results of three medical tests that Ms. O. claims clinically confirmed her symptoms, and Ms. O.'s subjective descriptions of her symptoms and resulting limitations.[5] The Court agrees with the Magistrate Judge that Ms. O.'s objections on those grounds fail, though not necessarily for the same reasons as set forth by the Magistrate Judge.

At the outset, the Court is obliged to settle a disagreement between the Parties as to the legal standard that governs the ALJ's obligation to consider the entire record. The Magistrate Judge, the SSA, and Ms. O. all agree there is no rigid requirement that an ALJ's decision specifically discuss every individual piece of contrary evidence. *See* ECF 47 at 30; ECF 50 at 11; ECF 56 at 9. However, Ms. O. contests the Magistrate Judge's statement that an ALJ "is only prohibited from ignoring an *entire line of evidence* that supports a disability finding." ECF 47 at 30 (citing *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (citing in turn to *Jones v.*

---

that arguments first raised in a reply brief are untimely."). Regardless, the objection fails. *Chenery* bars a reviewing court from supplying a "more adequate or proper basis" for an agency decision that was made on improper grounds. 332 U.S. at 196. The Magistrate Judge did not violate that principle when he looked to the record to evaluate the probative value of omitted evidence. On the contrary, that is precisely what he was required to do in a review for substantial evidence. *See Simms*, 877 F.2d at 1050. Finally, Ms. O. repeatedly objects that she did not consent to the Magistrate Judge's involvement in this case. However, under the Local Rules, the Court does not need the Parties' consent to refer a case to a Magistrate Judge for a report and recommendation. *See* Local Civil Rule 72.3(a). As for any other arguments that may have been alluded to in Ms. O.'s objections, the Court finds they are not sufficiently developed for review. *See N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.").

[5] The Court considers separately Ms. O.'s objection that the ALJ failed to consider the "reasonable accommodations" suggested by the state agency and by her treating physicians. *See infra* Part III.E.

*Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2013))). She contends that standard is contrary to the SSA's regulations and unsupported by binding authority. *See* ECF 50 at 11 (citing SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record.")).

Ms. O. is correct on that point, so far as it goes. The "entire line of evidence" standard, as articulated by the Magistrate Judge, is not binding law in this jurisdiction. Moreover, the Court agrees with Ms. O. that it may be too lax an implementation of the SSA's regulations. *See* ECF 58 at 7. It is easy to imagine a situation in which a single piece of evidence is sufficiently probative to a disability claim so that an ALJ's failure to consider it would be reversible error. The Court believes it is on far firmer ground focusing not on whether an omission constitutes an "entire line of evidence," but instead on whether that omission is prejudicial to the complaining party. *See Saunders*, 6 F.4th at 4 (applying the harmless-error standard to substantial evidence review). To put it differently, even if the Court perceives that the ALJ erred by failing to consider some piece of evidence, reversal is inappropriate unless the omitted evidence could have potentially changed the disposition of the claim. Here, the Court finds no omission that rises to that level.

The Court will consider each of the ALJ's purported omissions, outlined by Ms. O, in turn. First, Ms. O. objects that the ALJ failed to consider a "very large drop" in her I.Q. since her childhood. ECF 50 at 12. But Ms. O. fails to explain how the ALJ's failure to consider that evidence would be prejudicial, given that her I.Q. level during the period in question (in the high nineties) was entirely consistent with the ALJ's reliance on evidence that suggested she had "average cognitive functioning." *See* ECF 17-2 at 30; *see also* ECF 17-10 at 20 ("[C]laimant's Full Scale IQ score fell in the average range of intellectual functioning."). Indeed, it is unclear that

Ms. O.'s "average" I.Q. score would even be covered by the regulations' requirement that the SSA consider the "combined effect of all [claimant's] impairments." *See* 20 C.F.R. § 404.1523(c).

Second, Ms. O. contends that the ALJ failed to account for the following medically determinable impairments: (a) her learning disorders, (b) ulcerative colitis, (c) gastroesophageal reflux disease, (d) connective tissue disease, (e) chronic fatigue syndrome, (f) sleep apnea, and (g) Raynaud's syndrome. ECF 50 at 12. As an initial matter, the Court notes that it is not a medical expert; it is neither the Court's role nor within the Court's competence to independently analyze the implications of medical test results or to scrutinize the accuracy of medical professionals' interpretation of that data. Bearing that in mind, the Court finds no reversible omissions on the part of the ALJ.

The ALJ explicitly considered Plaintiff's learning disorders—including her dyslexia—but declined to give weight to those impairments because he found that they were undiagnosed during the period at issue. ECF 17-2 at 36. The ALJ also considered Ms. O.'s chronic fatigue syndrome, *id.* at 31, 35, and her sleep apnea, *id.* at 37. As for Ms. O.'s complaint that the ALJ failed to consider her ulcerative colitis, it is true that the specific term does not appear in the ALJ's decision. *See generally* ECF 17-2 at 23–40. But the ALJ did consider her diarrhea and irritable bowel syndrome, concluding that her "gastrointestinal symptoms" had improved with medication. *Id.* at 34–35. Moreover, although the ALJ failed to specifically mention her gastroesophageal reflux disease (GERD), Ms. O. points to nothing in the record that would indicate that the condition would alter the ALJ's determination of her residual functional capacity or her ability to work given his consideration of her gastrointestinal symptoms.

As for her connective tissue disease, Ms. O. represents that that condition "can manifest as Raynaud's phenomenon" or "Ehlers-Danlos syndrome," ECF 50 at 24 n.21, and that she suffered

from both. The ALJ expressly considered Ehlers-Danlos syndrome, concluding that "her symptoms . . . improved significantly" with medication. ECF 17-2 at 34. As for Raynaud's, the Court agrees with Ms. O. that the ALJ failed to consider that impairment, and accepts as true her representation that it is sufficiently distinct from her other connective tissue diseases that it was not accounted for by the ALJ's consideration of her Ehlers-Danlos syndrome. ECF 50 at 5 n.5. That said, the Court does not find that the ALJ's consideration of Raynaud's would have changed his overall evaluation of Ms. O.'s connective tissue disorders in the context of Listing 14.06 (which was based on the absence of three of the four required constitutional symptoms). *See infra* Part III.D. Nor would it likely have affected the ALJ's conclusion that Ms. O. retained the functional capacity to work, since that determination was made in part based on the treatment notes of Dr. Hashefi (the doctor who diagnosed her Raynaud's), which reflected Dr. Hashefi's observation that Ms. O.'s rheumatological symptoms had improved with medication. ECF 17-2 at 34; *see also, e.g.*, ECF 17-11 at 94, 97 (describing Ms. O.'s Raynaud's as "controlled"), 98, 104 ("no . . . active Raynaud's"), 110 ("She also has Raynaud's, which is worse in the cold weather but she states that her gloves are sufficient for this problem so she declines medication for Raynaud's at this time."). Thus, even assuming the ALJ erred by not considering Ms. O.'s Raynaud's syndrome, and even considering that evidence in the light most favorable to Ms. O., the Court does not find that the ALJ's failure to discuss that impairment was prejudicial to her claim.

Next, Ms. O. objects that the ALJ failed to consider several medical opinions: the March 2013 opinion[6] from her treating physician (Dr. David) that she remain on medical leave / partial

---

[6] Ms. O. erroneously states that this opinion was given in March 2012. ECF 50 at 6; *but see* ECF 17-8 at 62. Also, although earlier in the case Ms. O. attempted to distinguish between a doctor's opinion and a medical directive, *see* ECF 50 at 22 n.18, she now concedes that Dr. David's report should be analyzed as an opinion. ECF 58 at 15.

bed rest for two to twelve weeks, *see* ECF 17-8 at 75–77, certain aspects of the February and April 2014 opinions of two state agency physicians, and the April 2016 opinion of her cardiologist (Dr. Solomon). ECF 50 at 13–15. But the ALJ did consider those opinions. *See* ECF 17-2 at 37 (Dr. David), 37 (state agency), 38 (Dr. Solomon). The question of whether the ALJ gave those opinions the required weight is a separate issue considered *infra* in Part III.C.

Ms. O. also complains that the ALJ did not consider the results of three medical tests, which she asserts clinically confirmed many of her symptoms. Specifically, Ms. O. points to an April 2013 ambulatory EEG, a November 2013 ECG, and a January 2014 "tilt table" test. ECF 50 at 15–16. However, as the Magistrate Judge points out, an ALJ is entitled to rely on expert analysis of "raw medical data." ECF 47 at 35 (citing, amongst other cases, *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)). Ms. O. cites no authority that suggests the ALJ was obligated to engage in an independent analysis of the test results. Furthermore, Ms. O.'s primary complaint about the ALJ's failure to consider those results is that they were probative of her contention that she satisfied the requirements of Listing 4.05, *see* ECF 20-1 at 30–31, a contention that she does not repeat in her objections to the Magistrate Judge's Report. ECF 50 at 1 n.1.

Finally, Ms. O. objects that the ALJ did not properly consider her subjective description of her symptoms, as reflected in her hearing testimony and documented in the two function reports submitted by Ms. O. and her sister. *See* ECF 50 at 16 (citing ECF 17-6 at 72, 81). But the ALJ did consider Ms. O.'s descriptions of her symptoms, including those that she made to her doctors during the period in question. *See, e.g.*, ECF 17-2 at 34 (comparing the statements in Ms. O.'s function report with the activities she testified she was able to engage in); *id.* at 33–36 (finding repeatedly that "the claimant's statements concerning the intensity, persistence, and limiting

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). Ultimately, he did not fully credit Ms. O.'s self-reporting based on his review of the medical record. The ALJ also expressly discredited the function report filed by Ms. O.'s sister because it was, in his view, "not consistent with the medical evidence." *Id.* at 37. The Court cannot disturb the ALJ's credibility determinations. *See, e.g.*, *Crosson*, 907 F. Supp. at 3. In summary, Ms. O. has not shown that the ALJ prejudiced her disability claim by neglecting to consider probative evidence. Accordingly, the Court concurs with the Magistrate Judge that this part of her objection fails.

### B. The ALJ sufficiently described the "logical bridge" between the evidence and Ms. O.'s residual functional capacity.

Next, Ms. O. argues that the Magistrate Judge erred when he determined that "the ALJ sufficiently expressed the reasoning underlying his assessment of Plaintiff's [residual functional capacity] through his discussion of the medical and other evidence." *See* ECF 50 at 17–19. Rather, she contends that the ALJ failed to provide a "narrative discussion" that would "explain[] how he reached his conclusions as to what Ms. O.'s capabilities actually were." ECF 50 at 18. In Ms. O.'s view, that failure alone requires reversal and remand of the Commissioner's decision. *Id.* at 19. The Court disagrees and adopts the Magistrate Judge's conclusion on that point.

Per SSA regulations, the agency's assessment of a claimant's residual functional capacity "must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis, including [her ability to sit, stand, walk, use her hands or function on a regular and continuing basis]." SSR 96-8p, 1996 WL 374184, at *3, 5 (S.S.A. July 2, 1996). Other courts in this jurisdiction have not read that regulation to require that an "ALJ's opinion must include an analysis that addresses in writing each and every work-related function" described in that provision. *See Kim M. v. Kijakazi*, No. 20-CV-2072 (GMH), 2021 WL

4033060, at *7 (D.D.C. Sept. 3, 2021) (collecting cases). Rather, an ALJ is required only to "provide[] a thorough narrative discussion of [a claimant's] limitations'" and "buil[d] a 'logical bridge' from the evidence to his conclusion." *Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017); *see also Nsiah v. Saul*, No. 19-cv-42, 2021 WL 372784, at *14 (D.D.C. Feb. 3, 2021) ("[A] narrative discussion is sufficient for the ALJ to fulfill his obligation to complete a function-by-function analysis that allows the court to conduct meaningful review.").

Here, the narrative constructed by the ALJ goes something like this: although Ms. O. has a number of severe impairments that could cause the loss of function she claims, the medical evidence shows evidence that her symptoms improved with treatment to the point where she cannot demonstrate an inability to perform light work (with some modifications). The Court has no difficulty following that narrative and finds that the ALJ's "logical bridge" is supported by substantial evidence as required. Like in *Nsiah*, the ALJ "discussed how the evidence in the record conflicted with [Ms. O.'s] subjective complaints and explained why he weighed [her] subjective complaints as he did." 2021 WL 372784, at *15. The ALJ "noted other potentially conflicting evidence within the record, weighed the conflicting evidence, and explained the weight given to that evidence." *Id.* Like in *Kim*, the ALJ considered evidence that Ms. O.'s impairments responded well to treatment. *See* 2021 WL 4033060, at *15; *see also, e.g.*, ECF 17-2 at 33 ("her POTS is controlled with" medication), 34 ("claimant's migraine headaches remained well controlled" and "claimant noticed improvement" of her Ehlers-Danlos and gastritis symptoms), 35 ("since she began receiving treatment . . . physical examinations . . . have not generally revealed significant difficulty moving about"). The ALJ also considered the opinion of the state agency consultants who found that Ms. O. was capable of light work, though he considered the side effects of Ms. O.'s medications and found that Ms. O.'s capacity was more limited than did the state agency.

ECF 17-2 at 37. Finally, the ALJ considered that Ms. O. had been able to engage in several activities that suggested she retained more functional capacity than she represented in her testimony—for example driving, traveling cross-country, going out to lunch, and even doing some sewing. *See id.* at 35–36.

After weighing the evidence of Ms. O.'s impairments during the period in question, together with her improvements following treatment, the ALJ concluded "that the objective evidence fails to establish that the claimant has any significant restrictions that would prevent her from performing work consistent with the above residual functional capacity, despite her subjective complaints." *Id.* at 39. The ALJ's consideration of the evidence and evaluation of Ms. O.'s physical and mental impairments is entirely unlike the ALJ's opinion in *Contreras*, where that decision was reversed because the ALJ had neglected to consider the claimant's mental impairments at all, or the effects of those impairments on the claimant's activities of daily living. *See* 239 F.Supp.3d at 209. Accordingly, the Court finds that the narrative set forth by the ALJ is more than sufficient to meet the requirement that he construct a logical bridge between the evidence and the claimant's residual functional capacity.

**C. The ALJ properly weighed the opinions of Ms. O.'s treating physicians.**

Third, Ms. O. contends that the ALJ erred when he gave reduced weight to the opinions of her treating physicians. In making her argument, Ms. O. emphasizes the following passage from *Butler*:

> Because a claimant's treating physicians have great familiarity with her condition, their reports must be accorded substantial weight. A treating physician's report is binding on the fact-finder unless contradicted by substantial evidence. We thus require an ALJ who rejects the opinion of a treating physician to explain his reasons for doing so.

ECF 50 at 19 (quoting 353 F.3d at 1003). Ms. O. argues that *Butler* "established a conclusive presumption that treating physicians have 'great familiarity' with their patients' conditions and

were therefore entitled to significant weight." ECF 50 at 19. In Ms. O.'s view, the "weight-of-opinion factors" described in the agency's regulations—examining relationship, treatment relationship, supportability, consistency, and specialization—are only "additive." ECF 50 at 21 (citing 20 C.F.R. § 404.1527(c)).[7] In other words, Ms. O. contends that an ALJ is permitted to cite the weight-of-opinion factors as a reason to give additional weight to the opinions of a treating physician, but never to subtract weight. *Id.* The Court disagrees.

For one thing, *Butler* itself contemplates that that an ALJ can "*reject* the opinion of a treating physician" so long as he "explain[s] his reasons for doing so." *Butler*, 353 F.3d at 1003 (emphasis added). Moreover, Circuit precedent is clear that an ALJ is permitted to give reduced weight to the opinion of a treating physician if the decision to do so is properly explained and supported by substantial evidence. *See Brown v. Bowen*, 794 F.2d 703, 709 (D.C. Cir. 1986) ("The ALJ is certainly entitled to weigh conflicting opinions and to make his own assessment of their credibility."); *see also, e.g.*, *Glass v. Kijakazi*, No. 21-5141, 2022 WL 566488, at *1 (D.C. Cir. Feb. 23, 2022) (affirming where the ALJ "adequately explained his decision to afford no weight to the form opinions of appellant's treating physicians"); *Holland v. Berryhill*, 273 F. Supp. 3d 55, 63 (D.D.C. 2017) (finding that ALJ properly discredited the opinion of a treating physician when it was contradicted by the opinions of other doctors and the treating physician's own notes, which showed the claimant responding well to medication); *Hartline*, 605 F. Supp. 2d at 209 (affirming where ALJ rejected opinions by treating physicians because their "assessments were not well-supported by objective findings and/or treatment records and appeared to overly rely on the

---

[7] The Magistrate Judge correctly points out that § 404.1527(c) applies only to claims filed before March 27, 2017. ECF 47 at 60 n.45. Ms. O.'s claims were filed in 2013, and so that is the provision that applies here. There is no evidence, as Ms. O. suggests, *see* ECF 58 at 13–14, that the Magistrate Judge applied the wrong regulation to Ms. O.'s claims.

claimant's subjective complaints"). Finally, where an ALJ gives more weight to one piece of evidence than another, it is academic to debate whether he has increased the weight of the former, decreased the weight of the latter, or both. The Court does not think such an ephemeral distinction should affect its review one way or the other.

Here, Ms. O. objects to the ALJ decision to give limited weight to the opinions of Dr. David (her primary physician), Dr. Solomon (her cardiologist), Dr. Hashefi (her rheumatologist), and Dr. Bayat (her neurologist).[8] The Court concludes that those objections fail because the ALJ adequately explained his decision to give those opinions reduced weight, based on substantial evidence. The ALJ gave "partial weight" to Dr. David's opinion because he found that it was only partially consistent with other evidence in the record, including evidence that Ms. O.'s impairments improved with medication, the conflicting opinion of a different doctor, and Ms. O.'s testimony that she was able to drive.[9] ECF 47 at 37–38. The ALJ gave "little weight" to Dr. Solomon's opinion because Dr. Solomon had only seen Ms. O. sporadically, his report was based on Ms. O.'s self-report rather than an examination, and because the opinion was inconsistent with Dr. Solomon's earlier treatment notes, which were based on an examination of Ms. O. and stated that her symptoms had improved with medication. *Id.* at 38. As for Dr. Hashefi, the ALJ gave her opinion "little weight" because he found that it was inconsistent with the bulk of the medical evidence in the record, which the ALJ determined showed "unremarkable" results, and because

---

[8] Defendant argues that Ms. O. did not make an argument about Dr. Bayat in her original Motion for Reversal, and therefore cannot raise an objection on that subject now. ECF 56 at 7 (citing *Thomas v. Moreland*, No. CV 18-800 (TJK), 2022 WL 2168109, at *2 (D.D.C. June 16, 2022)). The Court need not decide that issue here, however, because even assuming that it is validly raised, Ms. O.'s objection fails.

[9] For these same reasons, the Court disagrees with Ms. O.'s contention that the ALJ was required to give "controlling weight" to Dr. David's opinion under 20 C.F.R. § 404.1527(c)(2). The ALJ reasonably found that Dr. David's opinion was inconsistent with substantial evidence in the record.

Dr. Hashefi's own treatment notes reflected her observation that Ms. O.'s symptoms improved with medication. *Id.* As for Dr. Bayat, Ms. O. appears to argue that the ALJ was required to give more weight to her initial diagnosis (that Ms. O. suffered from migraines) than her subsequent opinion (that the migraines were improving with medication). ECF 20 at 38 n.22. But both of those assessments represent the medical opinions of the same treating physician. Moreover, the Court is not permitted to second-guess the relative weight assigned to each by the ALJ.

Finally, Ms. O. objects that the ALJ erred by failing to "consider *all* of the [weight-of-opinion] factors in deciding the weight" given to her doctors' opinions. 20 C.F.R. § 404.1527(c) (emphasis added). However, the Court agrees with other courts that have said that the language of that regulation does not require an ALJ "to expressly discuss each of the factors" in their decision. *See Gordon v. Colvin*, No. 15-cv-1028, 2016 WL 6088263, at *17 (D.D.C. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6088266 (D.D.C. Oct. 18, 2016); *Turner v. Astrue*, 710 F. Supp. 2d 95, 106 (D.D.C. 2010). Here, "the ALJ's reasoning . . . [is] clear," *Patricia T. v. Kijakazi*, No. 21-cv-1028, 2022 WL 3583634, at *14 n.12 (D.D.C. Aug. 22, 2022), and the ALJ specifically states that he considered all the appropriate factors, ECF 17-2 at 38. Thus, the Court finds that the ALJ sufficiently explained his decision to give the opinions of Dr. David, Dr. Solomon, Dr. Hashefi, and Dr. Bayat the weight that he did, based on substantial evidence in the record.

### D.  The ALJ properly concluded that Ms. O. was not disabled under Listing 14.06.

Under the regulations that were applicable on August 5, 2016, a person with a diagnosis of undifferentiated or mixed connective tissue disease could meet Listing 14.06 in two ways. Under Listing 14.06A, she could show "[i]nvolvement of two or more body systems/organs," one of which was "involved to at least a moderate degree of severity," along with "[a]t least two of the [four] constitutional symptoms or signs" of undifferentiated and mixed connective tissue disease.

20

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.06A. The four constitutional symptoms of undifferentiated and mixed connective tissue disease are "severe fatigue, fever, malaise, or involuntary weight loss." *Id*. Alternatively, under Listing 14.06B, she could show "[r]epeated manifestations" of the disease, at least two of the four aforementioned constitutional symptoms, and a marked limitation in activities of daily living, social functioning, or concentration, persistence, or pace. *Id*., Listing 14.06B.

As an initial matter, Ms. O. contends the Magistrate Judge erred when he stated that "[b]oth Parties appear to agree that Listing 14.06B is at issue here" and reviewed the ALJ's conclusions only under that provision. Perhaps. But that objection is of no moment because the ALJ's determination that Ms. O. did not satisfy Listing 14.06 was based on his conclusion that she suffered from only one of the four constitutional symptoms of connective tissue disease (fatigue)— a conclusion that is dispositive under both 14.06A and 14.06B. *See* ECF 17-2 at 31. Because the Court finds no reason to reverse the ALJ's finding on that point, any error as to which listing is properly at issue in the case was harmless. *See Saunders*, 6 F.4th at 4.

That brings the Court to Ms. O.'s objection that the ALJ erred in concluding that she did not suffer from two of the four constitutional symptoms of undifferentiated and mixed connective tissue disease. Specifically, Ms. O. argues that uncontradicted evidence in the record showed that she suffered from "severe malaise." ECF 50 at 28. Ms. O. contends that the ALJ was not "authorized . . . to require medical evidence of the severity of malaise," and was therefore required to rely solely on her subjective description of her symptoms. *Id.* at 29 n.26. That contention is based on SSR 16-3, which states that the SSA "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the

individual." 2016 WL 1119029, at *5 (Mar. 26, 2016). However, as the Magistrate Judge points out:

> At the time of the ALJ's opinion, "objective medical evidence" was defined as "medical signs and laboratory findings," as distinguished from "[o]ther evidence from medical sources, such as medical history, opinions, and statements about treatment you have received." 20 C.F.R. §§ 404.1512(b)(1)(ii), (iii), 416.912(b)(1)(ii), (iii); *see also* SSR 16-3, 2016 WL 1119029, at *6 (contrasting objective medical evidence to other evidence from medical sources, such as "diagnoses, prognoses, and opinions as well as statements and medical reports about an individual's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms"). Reliance on the "medical evidence of record" to undermine a claimant's reports of her symptoms is not, then, violative of SSR 16-3 because "medical evidence" encompasses more than "objective medical evidence."

ECF 47 at 50–51. Moreover, the regulations specifically state that "[i]n evaluating the intensity and persistence of [a claimant's] symptoms, including pain, [SSA] will consider all of the available evidence, including [] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [them]." 20 C.F.R. §404.1529(a). That means that the ALJ was not only permitted but required to look to evidence beyond Ms. O.'s testimony.

The ALJ concluded that the evidence did not support a finding that Ms. O. suffered from severe malaise. The Court detects no error in the ALJ's analysis on that point. Thus, Ms. O.'s objection fails.

**E. The ALJ did not commit reversible error by failing to expressly consider evidence that Ms. O. would require reasonable accommodations to work.**

Ms. O.'s final objection to the Magistrate Judge's Report and Recommendation turns on the relationship between reasonable accommodations for a disability and the determination eligibility for disability benefits. Both Parties look to the Supreme Court's decision in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), to describe that relationship. *See* ECF 58 at 17–18; ECF 56 at 8. In *Cleveland*, the Supreme Court considered whether an individual who

is disabled for purposes of the Social Security Act (i.e., is unable to work) can simultaneously maintain a suit under the Americans with Disabilities Act (ADA), which requires that an individual be capable of performing the essential functions of their job "with or without reasonable accommodation." 526 U.S. at 807. The Supreme Court determined that there is not necessarily a conflict between a determination by the SSA that a claimant cannot work *without* a reasonable accommodation, and a determination under the ADA that the same claimant can perform the essential functions of a job *with* one. *Id.* at 803. The Supreme Court explained that "when the SSA determines whether an individual is disabled . . . it does *not* take the possibility of 'reasonable accommodation' into account." *Id.* (emphasis in original). Amongst other things, the Supreme Court noted that, given the workplace-specific, fact-intensive nature of the reasonable accommodation inquiry, requiring the SSA to consider the possibility and suitability of accommodations for every disability claim would overburden the agency. *Id.*

In the Report and Recommendation, the Magistrate Judge suggests that *Cleveland* bars an ALJ from taking any account of a claimant's potential need for accommodations. *See* ECF 47 at 49. But that reflects a broader reading of *Cleveland* than this Court adopts. *Cleveland* includes a descriptive statement that the SSA generally does not consider the availability of reasonable accommodations in making a disability determination. 526 U.S. at 803. It does not hold that the SSA is forbidden from doing so. *See id.* On the contrary, the Court agrees with Ms. O. that the ALJ has a duty to consider a medical opinion opining that an claimant is unable to perform a given kind of work without accommodations, as would be the case with any other medical opinion.

Nonetheless, Ms. O.'s objection fails. That is because the ALJ adequately considered both of the suggested accommodations. The first accommodation Ms. O. contends the ALJ failed to consider comes from the opinions of Dr. Solomon and Dr. Hashefi, both of whom Ms. O. contends

ordered her to elevate her legs for several hours a day. ECF 58 at 25. Ms. O. argues that those recommendations, taken together with the vocational expert's testimony that an employee who required such an accommodation would be unable to work in the national economy, ECF 17-2 at 81, required the ALJ to find that Ms. O. was disabled. However, the ALJ explained why he was giving limited weight to the assessments of Dr. Solomon and Dr. Hashefi, concluding that their opinions were not consistent with other evidence in the record, which tended to show that Ms. O.'s impairments had improved with medication. *Id.* at 38. The ALJ also specifically addressed the need for Ms. O. to elevate her legs, finding it inconsistent with "self-reports and instructions from her doctors," and noting that there was no evidence that compression stockings did not address the issue. *Id.* at 33–34. That is more than enough to demonstrate that the ALJ considered the evidence regarding the potential need for Ms. O. to elevate her legs.

The second accommodation Ms. O. contends the ALJ failed to consider is a list of "examples of reasonable accommodations for people with dysauton[o]mia" that appears repeatedly in the reports of the state agency consultants. ECF 17-3 at 11, 23, 38, 52. Those potential accommodations include extra time off for medical treatment, additional breaks, and the ability to telecommute on symptomatic days. *Id.* For one thing, it is far from clear that what appears to be a boilerplate list was intended as a list of reasonable accommodations that would be required for Ms. O. personally. After all, in the end the state agency consultants both concluded that Ms. O. was not disabled. *Id.* at 41, 55. Moreover, even assuming that the state agency's list of accommodations is contrary evidence, the ALJ sufficiently addressed the reports in which those lists appear. ECF 17-2 at 37. Indeed, the ALJ ultimately agreed with the state agency's determination that Ms. O. was capable of light work, with some additional limitations due to the side effects of her medication. *Id.* That the additional limitations deemed necessary by the ALJ were not the same as

those suggested by the state agency does not convince the Court that the ALJ ignored the state agency's report. *See Goodman*, 233 F. Supp. 3d at 109 (there is no "rigid requirement" that an ALJ "specifically refer to every piece of evidence in his decision").

In summary, the Court agrees with Ms. O. that a medical opinion stating that a claimant requires reasonable accommodations to work is probative evidence in a disability proceeding. However, the Court concludes that in this case the ALJ adequately considered the evidence that suggested Ms. O. might require such accommodations. Therefore, Ms. O.'s objections on that point fail.

## IV.    CONCLUSION

The Court finds that the agency committed no prejudicial error. The factual summary from the Magistrate Judge's Report and Recommendation is adopted in full. The Court also adopts the Magistrate Judge's conclusions upholding the Commissioner's decision, with the modifications described above. Accordingly, Plaintiff's Motion for Reversal, ECF 20, is DENIED. Defendant's Motion for Judgment of Affirmance, ECF 25, is GRANTED. The Court also accepts the Magistrate Judge's recommendation to DENY Plaintiff's Motion for Default Judgment, ECF 31, and Plaintiff's Motion to Expedite the resolution of the case, ECF 46.

A separate Order will accompany this Opinion.

**SO ORDERED.**

DATE: July 25, 2023

_____
Jia M. Cobb
U.S. District Court Judge